ORTEGA, P.J.
*10 Defendant appeals his judgment of conviction for third-degree assault, challenging the trial court's denial of his motion to suppress the victim's out-of-court eyewitness identification of him. In State v. Rives , 283 Or. App. 431, 388 P.3d 1110, vac'd and rem'd , 361 Or. 800, 400 P.3d 921 (2017) ( Rives I ), we affirmed the trial court's ruling. The Supreme Court allowed review and vacated and remanded for reconsideration in light of State v. Haugen , 361 Or. 284, 392 P.3d 306 (2017) ( Haugen II ). State v. Rives , 361 Or. 800, 400 P.3d 921 (2017) ( Rives II ). On remand, we again affirm.
We provide a limited description of the relevant procedural and background facts for purposes of our decision on remand, but a more detailed recitation of the facts can be found in our original opinion. Rives I , 283 Or. App. at 432-35, 388 P.3d 1110. In September 2010, two men assaulted the victim late one night in the parking lot of a bar in Grants Pass. The victim had had a negative interaction with defendant in the bar, and when he left the bar shortly after midnight, defendant and another man had made comments to the victim at the door. After the victim stepped out of the bar, one assailant "blindsided" him and another hit him with a hammer. Although the victim contacted police on the night of his assault, he was unable to provide any identifying information that night other than informing the original investigating officer that his assailants were members of the Vagos Motorcycle Club. Five days later, Detective Brown interviewed the victim, and during a sequential photo lineup of known Vagos members, the victim identified defendant and Haugen as his assailants.
Haugen and defendant were charged in the assault. Defendant went to trial in 2011, which ended in a mistrial. Meanwhile, in Haugen's case, he sought to suppress the victim's eyewitness identification. At the time of that suppression hearing, State v. Classen , 285 Or. 221, 590 P.2d 1198 (1979), controlled the test for admissibility of eyewitness identifications. Applying Classen , the trial court ruled in Haugen's case that the victim's identification of Haugen during the photo lineup was admissible. Haugen II , 361 Or. at 286, 392 P.3d 306. Haugen went to trial in April 2012, and a jury found *11 him guilty of third-degree assault. He appealed his conviction. During the pendency of that appeal, the Supreme Court decided State v. Lawson/James , 352 Or. 724, 291 P.3d 673 (2012), "in which the court substantially revised the Classen test." Haugen II , 361 Or. at 286, 392 P.3d 306. On appeal in this court, Haugen argued that the identification procedures used in his case raised serious questions about the reliability of the identification under Lawson/James and that we should remand the case to the trial court for a new hearing and trial, so that the trial court could apply the Lawson/James test. We disagreed, concluding that, even under Lawson/ James , the trial court correctly denied Haugen's motion to suppress the identification. *157 State v. Haugen , 274 Or. App. 127, 150, 360 P.3d 560 (2015), rev'd , 361 Or. 284, 392 P.3d 306 (2017) ( Haugen I ). Accordingly, we determined that there was no reason to remand the case to the trial court, and we affirmed. Id.
Meanwhile, the grand jury returned a superseding indictment against defendant and the state decided to retry him. After the Supreme Court's decision in Lawson/James , defendant moved to suppress the victim's out-of-court eyewitness identification under the new framework. The trial court ultimately denied that motion, and the case proceeded to a jury trial, which resulted in defendant's conviction for third-degree assault. He appealed, challenging the admission of the identification, and we affirmed. Rives I , 283 Or. App. at 443, 388 P.3d 1110. At the time of our decision affirming the trial court, the Supreme Court had accepted review in Haugen I , but had not yet decided the case. As explained below, ultimately the Supreme Court remanded Haugen's case to the trial court so that the court could consider the admissibility of the eyewitness identification under the Lawson/James framework. Haugen II , 361 Or. at 309, 392 P.3d 306.
We pause here to provide a quick refresher of Lawson/James because it provides important context for the discussion that follows of Haugen I , Haugen II, and Rives I .
Lawson/James established a two-step process. State v. Hickman , 355 Or. 715, 724, 330 P.3d 551 (2014). The first step requires the state, as the proponent of the eyewitness *12 identification, to establish "all preliminary facts necessary to establish admissibility" under generally applicable provisions of the Oregon Evidence Code. Lawson/James , 352 Or. at 761, 291 P.3d 673. That step provides the "minimum baseline of reliability" for eyewitness identifications and implicates "three interrelated evidentiary concepts: relevance under OEC 401, personal knowledge under OEC 602, and lay opinion under OEC 701." Hickman , 355 Or. at 728, 330 P.3d 551. If the state satisfies its burden in the first step, the second step of the process places the burden on the defendant to demonstrate that "the danger of unfair prejudice substantially outweighs the identification's probative value" under OEC 403.[1] Id. at 733-34, 330 P.3d 551. In conducting the OEC 403 inquiry, where an eyewitness has been exposed to suggestive police procedures, the trial court has a "heightened role as an evidentiary gatekeeper because 'traditional' methods of testimony reliability-like cross-examination-can be ineffective at discrediting unreliable or inaccurate eyewitness identification evidence." Lawson/James , 352 Or. at 758, 291 P.3d 673.
In Lawson/James , the court also identified two categories of factors that have been found to affect the reliability of eyewitness identifications: "estimator variables" and "system variables." Hickman , 355 Or. at 724, 330 P.3d 551. Those variables can play a role in both steps of the Lawson/James framework. Id. at 730-32, 330 P.3d 551. Estimator variables "generally refer to characteristics of the witness, the alleged perpetrator, and the environmental conditions of the event that cannot be manipulated or adjusted by state actors."[2] Lawson/James , 352 Or. at 740, 291 P.3d 673. System variables refer to "circumstances *13 surrounding the identification procedure itself that are generally within the control of those administering the procedure."[3] Id. *158 With that framework in mind, we proceed to summarize our decision in Haugen I . As noted, the suppression hearing in Haugen I had occurred at a time when Classen still controlled the admissibility of eyewitness identifications. On appeal, Haugen urged us to remand for the trial court to conduct a hearing under the new framework. We declined to do so, concluding that "the record amply demonstrate[d] that the victim's identification was sufficiently reliable to be admitted under Lawson/James ." Haugen I , 274 Or. App. at 146, 360 P.3d 560. Applying the first step, we determined that the state had carried its burden to establish a "minimum baseline of reliability." That is, the eyewitness identification "satisfie[d] the low threshold of relevance under OEC 401," met the personal knowledge requirement under OEC 602, and, under OEC 701, any issue of fact as to the basis for the witness's identification ("his or her own perceptions" as opposed to an impermissible basis such as "suggestive police procedures") could only be "reasonably resolved in the state's favor." 274 Or. App. at 147, 360 P.3d 560. As to the second step, we concluded that Haugen "makes no OEC 403 argument on appeal" and "because OEC 403 provides no basis in this case for the exclusion of admissible evidence, we conclude that the trial court correctly denied defendant's motion to suppress." Id. at 150, 360 P.3d 560.
On review, the Supreme Court agreed with our conclusion that the state had satisfied its burden under the first step of the process by establishing a "minimum baseline of reliability." Haugen II , 361 Or. at 304, 392 P.3d 306. However, the court *14 ultimately disagreed with our conclusion that Haugen had failed to make an OEC 403 argument on appeal. Id. The court noted that Haugen had pointed to the many system and estimator variables that he contended were present in the victim's eyewitness identification and had argued for a remand for the trial court to apply the Lawson/James framework. The court concluded that, "[i]n other words, defendant argued that the probative value of the evidence should be determined by considering the relative reliability of the eyewitness testimony, given the system variables and the estimator variables, as explained in Lawson/James ." Id. at 304-05, 392 P.3d 306. And "[t]hat, at its core, is an OEC 403 argument." Id . at 305, 392 P.3d 306.
Given its conclusion that Haugen had made an OEC 403 argument, the court evaluated whether the "presence of facts falling into the categories of estimator and system variables raises serious questions about the reliability, and, thus, the probative value, of the eyewitness identifications. If so, then we must consider whether there is little likelihood that [applying Classen ] affected the verdict." Id. That evaluation revealed that facts present in the case, viewed in the light most favorable to defendant, could have supported a trial court finding that there were estimator and system variables at play that negatively affected the reliability of the identification. Id. at 305-06, 392 P.3d 306. In other words, the trial court could have concluded that the presence of those variables had negatively affected the probative value of the eyewitness identification.
The Supreme Court also noted that, because the trial court had relied on Classen , Haugen did not have an opportunity to present evidence or expert testimony at the suppression hearing to explain the estimator variables and the system variables at play and the trial court had not had an opportunity to evaluate the probative value of the identification in light of those variables. Id. at 309, 392 P.3d 306. Ultimately, the court concluded that the trial court had not had an opportunity to "properly exercise its gatekeeping role" because, "not having assessed those estimator and system variables, [it] could not have made an informed decision about the admissibility of the eyewitness identification evidence under *15 OEC 403." *159 Id. at 310, 392 P.3d 306. The court explained that, because an application of the Lawson/James framework could have resulted in the exclusion of the eyewitness identification evidence, the error in applying Classen was not harmless. Id . Accordingly, the court remanded the case to the trial court "to consider the admissibility of the identification[ ] under the correct standard" and instructed that, on remand, the parties "must be permitted to supplement the record with any additional evidence that may bear on the reliability of the eyewitness identification *** and present arguments regarding the appropriate application of the procedures set out in Lawson/James ." Id .
With that background in mind, we return to our decision in Rives I . At the outset, we note that the suppression hearing in this case occurred after Lawson/James . Accordingly, at that hearing, defendant "provided the testimony of an expert witness who discussed the variables and how they were put into play in this case." Rives I , 283 Or. App. at 439, 388 P.3d 1110. As we explained in Rives I ,
"[a]s to the estimator variables, [defendant] claimed that the victim was scared, injured, and under a high level of stress during the assault, which came from the 'blindside' in a dark parking lot. He pointed out that the victim's attention was likely focused on his first assailant, so any exposure to his second assailant was very brief. Defendant also maintained that the victim told an officer in the immediate aftermath of the assault that he could not identify his assailants because the incident was brief and it was dark out. Finally, defendant argued that he had no particular distinctive characteristics that would make the victim's identification more reliable.
"As to the system variables, defendant asserted that the victim's memory was contaminated by the photo lineup procedure used by the police. In particular, he took issue with use of a lineup consisting of only known Vagos members, with no 'known innocents.' Defendant also claimed that Brown supplied the victim with information during the lineup that may have contaminated the victim's memory and that Brown made suggestive comments during the lineup that may have added a false sense of certainty to the victim's identification.
*16 "The court denied defendant's motion, concluding that neither estimator nor system variables required exclusion of the identification evidence. As for estimator variables, the court found the victim to be a credible witness, and noted that, 'prior to the assault,' the victim was in a well-lit room with 'a limited number of people' who were easily identifiable by their Vagos apparel. The court pointed out that the victim had a 'face to face' conversation with defendant in the bar, and that the victim had not been drinking alcohol on the night of the incident. The court noted that on the night of the assault, the victim's reluctance to talk to the police was due to being traumatized by the assault, and that 'his chance to accurately relate what he saw was much better five days after than when he talked to [an officer the night of the assault].'
"As for system variables, the court determined that, although perhaps unusual, the photo lineup procedure used by the police was appropriate given the circumstances. The court noted that the victim 'directed the officer to the Vagos, as opposed to vice versa.' The officer gave a standardized instruction before a 'blind administration' of the lineup and, given the victim's identification of his attackers as Vagos members, it made sense to 'have in the sequential throw downs *** members of the Vagos, and they were all blue back DMV photographs, could not shed light on the height, really or the weight.' The court noted that 'it would have been ideal' if the officer 'could have found some DMV pictures of the person that was not a Vagos *** just to make sure that the identification was sound, *** but it's adequate.' "
Id. at 439-40, 388 P.3d 1110 (first bracket added; second bracket in original; omissions in original). The trial court ultimately concluded that "the state proved by a preponderance of the evidence that the eyewitness identification was sufficiently reliable to allow it into evidence." Id. at 440, 388 P.3d 1110. The court noted that the identification was *160 not unduly prejudicial, and that defendant could " 'probe the issues regarding estimator variables through cross-examination.' " Id.
On appeal, we agreed with the trial court that the state had carried its burden under the first step of Lawson/ James . Id. at 440-42, 388 P.3d 1110. First, defendant did not dispute that the victim's identification was relevant. Instead, defendant focused his appellate arguments on OEC 602 and OEC 701.
*17 As for OEC 602, we concluded that the state carried its burden because "it adduced evidence from which a rational juror could find that the victim was able to make observations necessary to make the identification." Id. at 440-41, 388 P.3d 1110. As to the OEC 701 inquiry, we noted that defendant was making many of the same arguments that we had already rejected in Haugen I -mainly, that the lineup procedure used by Brown was unduly suggestive. We also rejected those arguments in Rives I , explaining that " 'any reasonable factfinder would conclude that the victim's identifications * * * were "more likely based" on his "own perceptions" than on any other factors.' " Id. at 442-43, 388 P.3d 1110 (quoting Haugen I , 274 Or. App. at 150, 360 P.3d 560 ). We further explained that any difference in the arguments made by defendant and the arguments made in Haugen I were not significant enough to warrant a different conclusion, and thus concluded that the victim's identification satisfied the OEC 701 inquiry. Id. at 443, 388 P.3d 1110.
We next addressed the second step of the Lawson/ James analysis, which required us to "review the trial court's determination as to whether defendant demonstrated that the danger of unfair prejudice substantially outweighs the identification's probative value for an abuse of discretion." Id. As to the OEC 403 inquiry, defendant argued that the identification was unduly prejudicial because " 'police used an invalid lineup procedure to bolster an invalid identification.' " Id. In other words, defendant asserted that the suggestive nature of the photo lineup rendered the identification unreliable, and thus inadmissible under OEC 403. In rejecting that argument, we concluded that,
"even if we assume for the sake of argument that the lineup procedure used by Brown was suggestive in some way, the trial court was within its discretion to conclude that the danger of unfair prejudice does not substantially outweigh the identification's probative value. That is so because, given our conclusion that any reasonable factfinder would conclude that the victim's identification of defendant was more likely based on his own perceptions than on any suggestive police procedures, any prejudice to defendant was slight, and the probative value (that is, reliability) of the victim's identification was high."
Id .
*18 The Supreme Court vacated our decision and remanded the case for reconsideration in light of Haugen II . Accordingly, we begin with the first step in the Lawson/James framework. As to that step, we note that nothing in Haugen II calls into question our conclusion in Rives I that the state satisfied its burden under the first step. That is so because the Supreme Court's remand in Haugen II was based entirely on the second step in Lawson/James . In fact, the Supreme Court explicitly agreed with our conclusion in Haugen I that the state had satisfied its burden to show a "minimum baseline of reliability." 361 Or. at 304, 392 P.3d 306. Accordingly, nothing in Haugen II undermines our conclusion that the state satisfied its burden in this case to prove a "minimum baseline of reliability," and we reaffirm our conclusion in Rives I that "the state presented an adequate foundation under OEC 401, OEC 602, and OEC 701 for admission of the victim's eyewitness identification, and, thus, satisfied the first step of the Lawson/James framework." 283 Or. App. at 443, 388 P.3d 1110.
Next, we address the second step of Lawson/James . The Supreme Court remanded in Haugen II because the trial court had conducted the suppression hearing without the benefit of Lawson/James , and the error in applying Classen was not harmless. That is, Haugen did not have an opportunity to present evidence or expert testimony explaining any of the estimator variables or system variables, and the trial court did not have an opportunity to consider them. The Supreme Court explained that, viewing the facts from Haugen's perspective, "a trial court applying *161 Lawson/James could find that a number of estimator variables were at play that negatively affected the victim's perceptions" and "several system variables were present and raise concerns." Haugen II , 361 Or. at 305-06, 392 P.3d 306. In other words, given the incorrect legal standard applied by the trial court, and given that there were facts in the record from which the trial court could have found that the reliability (and thus probative value) of the identification was questionable, the trial court "could not have made an informed decision about the admissibility of the eyewitness identification evidence under OEC 403." Id. at 310, 392 P.3d 306.
From a procedural standpoint, this case differs significantly from Haugen II . Here, the parties argued the case *19 and presented expert testimony about the Lawson/James variables, and the trial court analyzed the admissibility of the identification under the Lawson/James framework. Ultimately, then, we are left to review the trial court's decision to admit the identification under OEC 403 for an abuse of discretion. We already did that in Rives I , but in light of some of the concerns expressed in Haugen II by the Supreme Court about this particular eyewitness identification, we provide additional explanation for our conclusion.
We begin, however, by noting that the Supreme Court's decision in Haugen II was predicated on a different standard of review than is at play in this case. That is, the Supreme Court was tasked with evaluating whether it was harmless for the trial court to have applied Classen . In that posture, the Supreme Court viewed the facts in the light most favorable to Haugen and concluded that, viewing the facts in that light, the trial court could have excluded the eyewitness identification. That was so because the facts could have supported a trial court finding that the environmental conditions were "poor" and the victim was "under stress because of the surprise nature of the attack and because he was badly injured." Id. at 305, 392 P.3d 306. Further, the facts could have supported a trial court finding that Brown "provided continuous suggestive and confirming feedback during the photo lineup[,]" and it could have found that "source confusion" was present. Id. at 306-08, 392 P.3d 306. The Supreme Court explained that those possible factual findings by the trial court raised "serious questions about the reliability of the identification evidence admitted at [Haugen's] trial," and, without having assessed the variables, the court "could not have made an informed decision" under OEC 403. Id . at 310, 392 P.3d 306.
That is not the situation we are faced with here. Rather, here, the trial court considered the facts underlying the eyewitness identification of Haugen and defendant as well as the presence of estimator and system variables and how those variables may have affected the reliability of the victim's eyewitness identification. In doing so, the trial court explicitly found that, although the sequential photo lineup was not "perfect" and some of Brown's questioning was "suggestive," overall the procedure was adequate and not unduly suggestive, and other facts indicated that the identification *20 was reliable.[4] Significantly, the court in Haugen II did not conclude that the record compelled the trial court to decide that the estimator and system variables that it had identified had reduced the reliability of the identification to such a degree that exclusion was required under OEC 403. Rather, the court left that to the trial court on remand. Here, the trial court has already conducted that inquiry, and we conclude that it was within its discretion to reach the conclusion that it did-defendant failed to demonstrate that the court should exclude the eyewitness identification under OEC 403.
Affirmed.

OEC 403 provides:
"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

The estimator variables identified in Lawson/James include:
"(1) the witness's level of stress; (2) the witness's focus and attention; (3) the duration of exposure to an alleged perpetrator; (4) environmental viewing conditions; (5) the witness's physical and mental characteristics and condition; (6) the witness's description of the perpetrator; (7) the perpetrator's characteristics; (8) the speed of the identification; (9) the witness's confidence or certainty (noted as not reliably indicative of accuracy); and (10) memory decay."
Haugen I , 274 Or. App. at 141, 360 P.3d 560.

The system variables identified in Lawson/James include:
"(1) whether the identification procedure was conducted by a person who was unaware of the suspect's identity; (2) whether preidentification instructions were given to reduce the likelihood of misidentification; (3) the manner in which the photographic lineup was constructed and presented to the witness; (4) whether multiple viewings of the suspect could have led to source confusion; (5) whether suggestive wording or leading questions by investigators could have contaminated the witness's memory; and (6) whether confirming feedback could have falsely inflated the witness's confidence in the accuracy of his or her identification."
Haugen I , 274 Or. App. at 141, 360 P.3d 560.

We note that defendant did not argue on appeal that the trial court misapplied any of the estimator or system variables as a matter of law.